## WILLIAM STACY v. W. S. DELERY.

Decided October 23, 1909.

**1.—Pleading and Proof—Judgment without Pleading.**

In a suit for damages to a crop of rice caused by the appropriation by the defendant of all the water in an adjacent stream, and wherein plaintiff alleged that he was deprived of the water by a dam built by defendant across a certain prong of the stream, but the evidence showed that the damage was not caused by the building of said dam but by the building of dams on a different prong of the stream, a judgment for plaintiff was not warranted by the pleading. Facts proved but not alleged can not form the basis for a judgment.

**2.—Riparian Rights—Use of Water.**

Each riparian owner has equal rights in the stream of water which flows by him, but the use of each must be reasonable as regards the rights of others; what is such reasonable use is a question of fact for the jury in each case. The right to take is not only to use the water as it flows by, but also to store it in reservoirs or confine it for future use after it has ceased to flow, provided this can be done consistently with the rights of lower owners.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*Stevens & Picket,* for appellant.—In case the reasonable use of the water consistent with a like use by other riparian owners can not be made, the injury to a riparian owner by reason of an appropriation of water by an irrigation enterprise is nominal only. Crawford v. Hathaway (Neb.), 93 N. W., 781.

The rule that riparian owners are entitled, as against each other, to the reasonable use of a stream for irrigation, has limitations, as, where a stream is so small that, if the upper riparian owner makes any use at all of the stream, it would be worthless to the lower riparian owner, the former may use it all. Guiterez v. Wedge, 145 Calif., 730, 79 Pac., 449.

A diminution of the flow of water over riparian lands caused by its use for irrigation purposes by an upper riparian owner occasions no injury for which damages may be allowed unless it results in subtracting from the value of the land by interfering with the reasonable use of the water which the land-owner is able to enjoy. Clark v. Allaman (Kan.), 80 Pac., 571.

A riparian owner is only entitled to receive his proportionate part of the natural flow of the water, and this does not authorize him to receive water which has been stored by another riparian owner in reservoirs in time of flood from storm water. Crawford v. Hathaway, 93 N. W., 781; Modoc v. Booth, 36 Pac., 431; Fifield v. Spring Valley Waterworks, 62 Pac., 1054; Black's Pomeroy on Water Rights, 75.

The Supreme Court of the State of Texas having held, at the time that the plaintiff Stacy constructed his dams upon the two different bayous, that the upper riparian owner had the right to use the flow of the stream to the exclusion of the lower riparian owner, such decision of said Supreme Court was a rule of property, and the said Wm. Stacy, under said rule of property, acquired a vested right which

should not be disturbed by the subsequent claim of the defendant Delery. Upon the question of rule of property: June v. Purcell, 36 Ohio St., 396; Mayman v. Reviere, 47 Texas, 357; Emerson v. Atwater, 7 Mich., 12; Thomas v. Greenwood, 6 Ohio Dec., 639; Rhodes v. Whitehead, 27 Texas, 304; Tolle v. Correth, 31 Texas, 362; Barrett v. Metcalfe, 33 S. W., 758; Baker v. Brown, 55 Texas, 377; Mud Creek Irrigation Co. v. Vivian, 74 Texas, 170.

*Baker, Botts, Parker & Garwood,* for appellee.—The evidence in this case shows that White's Bayou is a running stream of water during the greater portion of each year, and that the water flowed in same during the year 1907 until July 25th; that after the heavy rains of May 28, 1907, appellant Stacy repaired his dams so as to prevent the flow of any water in said stream past said dams; thereby preventing defendant Delery from obtaining the use of any of the water flowing into said stream from the time said dams were repaired and said water stopped, during the remainder of that season; that appellant having stopped the flow of said water, and having confined the entire flow by his dams, refused to release said water, even after he could not get the benefit of it himself, and at a time when there was sufficient water confined in said stream to enable Delery to have matured his crop; that after that time, and after this suit was instituted, Delery, by written notice, directed attention of plaintiff Stacy to said fact, and notified him of the damage that Delery was sustaining; that notwithstanding this the plaintiff Stacy refused to let any part of the water through his dams to go to the relief of the defendant Delery, and therefore the judgment is supported by the facts. Watkins Land Co. v. Clements, 98 Texas, 578; Santa Rosa Co. v. Pecos River Co., 92 S. W., 1014.

The rights of riparian owners to the use of a stream are equal, no matter what the limitations are upon the capacity of the stream. Watkins Land Co. v. Clements, 98 Texas, 585 and 587; Santa Rosa Co. v. Pecos River Co., 92 S. W., 1014.

The undisputed proof in this case shows that White's bayou has all the attributes of a riparian stream, and the fact that in dry weather the water ceased to flow in it does not affect the riparian rights of property owners along said stream. Gramann v. Eicholtz, 36 Texas Civ. App., 309; Lambert v. Alcorn, 144 Ill., 313, 33 N. E., 53; Mace v. Mace, 40 Or., 586, 67 Pac., 660, 68 Pac., 737; Lux v. Haggin, 69 Cal., 255, 10 Pac., 769; Conniff v. San Francisco, 67 Cal., 45, 7 Pac., 41; New York C. & S. Ry. v. Hamlet, 149 Ind., 344, 47 N. E., 1060, 49 N. E., 269; Mann v. Retsof Mining Co., 63 N. Y. Sup., 752; Spink v. Corning, 70 N. Y. Sup., 143; Neal v. Ohio River Co., 47 W. Va., 316; Macomber v. Godfrey, 108 Mass., 219; Rigney v. Tacoma Light & Water Co., 9 Wash., 576; Town v. Missouri, etc., Ry., 50 Neb., 768; Sheehan v. Flynn, 59 Minn., 436; Ferris v. Wellborn, 64 Miss., 34.

REESE, ASSOCIATE JUSTICE.—This suit was brought by William Stacy in the District Court to enjoin W. S. Delery and Jane Frisbie

from cutting certain dams erected by Stacy on White's Bayou. Both defendants answered. Delery also pleaded in reconvention for damages against plaintiff Stacy, occasioned by injury to his rice crop caused by unlawful detention and appropriation by plaintiff of water flowing in White's Bayou. After answer by defendants, plaintiff dismissed his suit for injunction with the allegation that such remedy was no longer necessary, and the cause as between Stacy and Delery proceeded to trial upon Delery's plea in reconvention. Upon trial without a jury judgment was rendered for Delery for $826.25, from which Stacy appeals.

By the first, second, fifth and tenth assignments of error appellant complains of the judgment as based upon a cause of action not embraced in the pleadings but variant therefrom. The plea in intervention sets out that appellee had rented a tract of land for the year 1907, upon which he had planted and was growing a crop of rice. The land lay along White's Bayou, a running stream from which appellee procured water to water the crop, catching and holding the water in a dam across the bayou, and pumping it out on his rice. That appellant, who was a rice grower on land above him, had placed a dam in White's Bayou and had thereby stopped the flow of the stream, appropriated all of the water and prevented any of it from reaching appellee at a time when he was in pressing need of the same to water his rice crop, for the lack of which water his rice crop was injured.

It is further alleged in the pleadings, "That the stream known as White's Bayou has its head at a point north or northwest from the town of Devers, on the north side of the Texas & New Orleans Railway track, and runs thence in a eastwardly direction through the Whittington league, owned by William Babcock, and turning south across said railway at a point east of the town of Devers, and enters the Benjamin Barrow survey of land, and continuing thence in a southwardly direction, passing through said land leased by the defendant, W. S. Delery, hereinabove described. That in recent years a gully has been washed out by the flow of water caused by rainfall, which gully beginning on said White's Bayou and the Benjamin Barrow survey of land, extending thence northwestwardly through said Barrow's survey, a part of the Chism survey, and on west of the town of Devers, the head of said gully being near to said White's Bayou, northwest of said town of Devers; that this said gully is not now and has never been the main stream or waterway of White's Bayou, but that same has only in recent years come into existence as a stream, and that by reason of natural rainfall and overflow of water from said White's Bayou northwest of the town of Devers, which rainfall and overflow water following a natural depression west of said town of Devers, has flowed southwardly into the said White's Bayou again, and by reason of washing caused by said rainfall and said overflow of water from said White's Bayou the said gully has been made. That one tract of plaintiff's land borders on said White's Bayou, and said tract of land so bordering upon said White's Bayou is shown on the map, which the defendant hereto attached, and same

is marked for identification; that the other two tracts of land owned by plaintiff are on the said gully, which is located west of the town of Devers, as hereinabove described and referred to; that the said two tracts of said land are not riparian to the said White's Bayou, and the same do not touch or come in contact with the said White's Bayou in its natural channel or proper basin. This defendant is informed and believes, and upon such information and belief avers, that said plaintiff's crop of rice referred to and described in his petition was grown upon said tracts, which are not riparian to the said White's Bayou. This defendant says, therefore, that the plaintiff did appropriate the water from White's Bayou to irrigate said tracts of land which are not entitled to irrigation from it; that the supply of water from White's Bayou is wholly inadequate to irrigate the lands owned by plaintiff, which are not riparian to said White's Bayou, and the land leased by defendant Delery and upon which the said Delery was growing a crop of rice last year."

A plat attached to the plea in reconvention and introduced in evidence shows the stream, the course of which has been shown, marked "White's Bayou," and the other stream marked "White's Bayou Gully," the upper end of which is shown to be connected with White's Bayou by a ditch, and which runs thence in about a straight line to connect with White's Bayou below the lands marked as Stacy's lands, and above the lands of Delery. The map also shows Stacy's cultivated land lying along its stream marked White's Bayou Gully, other lands intervening between them and White's Bayou. The sketch also shows a dam on White's Bayou, just above the junction of the two streams, and another further up the stream marked White's Bayou Gully.

It is further alleged "that the said tract of land which is located upon and which is riparian to the said White's Bayou is south of and along the course of said White's Bayou, below the other tracts of land owned by plaintiff; that said tract of land riparian to said bayou is woodland, not adapted for the cultivation and growth of rice, and that no part of same is now in cultivation for the purpose of growing rice, and that none of the water from said White's Bayou was used upon said land for the purpose of irrigating crops growing on same; that said plaintiff has constructed a dam across said bayou, and by means of said dam stops the water which should naturally drain past the land of the defendant Delery, and confines same by said dam on the said tract of land owned by plaintiff, and within the banks of said White's Bayou, and then pumps same from said dam back upon the lands owned by plaintiff, which are not riparian to White's Bayou; that said dam practically consumes all of the water flowing through said White's Bayou, and plaintiff is now appropriating and seeking to appropriate all of said water, and confines same by said dam, thereby preventing it passing beyond same to the land being cultivated by said Delery; that it is not necessary for the cultivation and growth of crops of rice upon said plaintiff's premises to appropriate all of said water, but that the said plaintiff is storing said water on his said land, instead of permitting the same to take its natural course,

which would permit it to reach the land leased and cultivated by said defendant Delery."

It is made clearly to appear from the allegations of the plea that appellee intends to distinguish carefully White's Bayou from the other stream which he calls a gully, and which is marked on his sketch as White's Bayou Gully, and the gravamen of his complaint is that by means of a dam across White's Bayou, which is shown on the sketch, appellant has impounded the water coming down White's Bayou, thus depriving appellee of the use thereof to water his lands lower down on the stream and using the same to water his (appellant's) rice on land alleged to be not riparian to White's Bayou, but lying along said gully. In every way appellee distinguishes White's Bayou from White's Bayou Gully, and makes it clear that his ground of complaint is the damming up of White's Bayou, and the stoppage of the flow of water down this stream and using it to irrigate land on the "gully" and away from this stream. No reference is made to any dam on the stream which he distinguishes as White's Bayou Gully, or to any flow of water down said stream. By means of the allegations of the plea, in connection with the sketch, appellee puts his finger upon the objectionable dam across White's Bayou, above the lower junction of that stream with the so-called gully.

The court found, as a basis for the judgment (and the findings are not disputed), that White's Bayou divides at the point where the ditch was cut and runs into two prongs (one being the stream called by appellee White's Bayou, and the other the stream which he denominates White's Bayou Gully), the two prongs uniting below appellant's and above appellee's lands; that both streams throughout their courses possess all the characteristics of watercourses as defined by law, and that the water runs through both of them during all the year, except extreme dry weather in the summer time. The court in its findings speaks of the stream marked on the sketch as White's Bayou, as the east prong of the bayou, and the other as the west prong. The court in its findings treats each prong as White's Bayou.

The court finds that appellant had erected two dams across the west prong, and at a point lower down and a short distance above the junction had erected a dam "extending from the east bank of the east prong to a point about where Big Ben's Marsh empties into the eastern prong, across to the western bank of the western prong." The court further finds that "by reason of said series of dams the plaintiff Stacy stopped entirely the flow of water in White's Bayou, confining in said dams all the water that came down this stream and permitting none of it to pass save that which wasted from his irrigated lands."

The findings of the court leave no room for doubt that when White's Bayou is spoken of the stream embracing both prongs is meant, and that the judgment is based upon the stopping of the water flowing down both streams and obstructed in both by the "series of dams" mentioned.

It is further found that in 1907 the water ceased to run in the eastern prong (White's Bayou) on July 1, 1907, and in the western prong

(White's Bayou Gully) on July 25th, and it is so conclusively shown that appellee had sufficient water to thoroughly water his rice crop up to July 20th, and that he in fact watered his crop up to about July 25th. Appellee had a dam to catch the water at his place sufficient to hold enough water for said purposes.

When we consider that the water ceased to flow in White's Bayou or the eastern prong on July 1st, and continued to run in the western prong, or White's Bayou Gully, until July 25th, and that appellee had plenty of water at least as late as July 20th, it is clear that his damage was caused principally, if not entirely, by the erection of the three dams in the western prong across the stream called by him "White's Bayou Gully," and that the dam complained of by him in his plea, across White's Bayou, or the eastern prong, contributed very little thereto, if at all. Clearly this western prong carried the heavier flow of water. Eliminate all the dams on the western prong, or gully, of which there is no mention in the pleading, and it does not appear that appellee would have suffered any damage, as he would have received the flow of that stream to fill his dam until July 25th. By the allegations of the plea appellant had no notice that any complaint was made of any of his dams on the western prong of the stream, as found by the court. It is not necessary to cite authorities to sustain the proposition that facts proven but not alleged can not form the basis of a judgment. The several assignments referred to are well taken, and must be sustained.

The seventh assignment of error is as follows: "Because the evidence is insufficient to support the verdict and judgment of the court." The assignment is too general to require consideration, and would not be considered but for the fact that the judgment will be reversed on another ground, and in view of another trial it is proper that we express our views upon some of the propositions advanced under the assignment. (Miller v. Schmullen, 37 Texas, 233; Randall v. Carlisle, 59 Texas, 70; Yoe v. Montgomery, 68 Texas, 342; Bonner v. Whitcomb, 80 Texas, 342.) The error is not fundamental.

The first proposition under this assignment is that a riparian owner is only entitled to his proportionate part of the flow of a running stream, and after a running stream has ceased to flow naturally, a lower riparian owner has no cause of action to an upper riparian owner who, during the time that the stream flowed naturally, stored in reservoirs a part of the water, provided that during the period of such storage by the upper owner the lower owner received his quota of the flow of the stream.

The opinion of the Supreme Court in Watkins Land Co. v. Clements (98 Texas, 578) must be taken as settling the law in this State as to the respective rights of riparian owners on the same stream in the water of the stream for irrigation purposes, and that "such riparian owner has equal rights in the stream of water which flows by him, and the use of each must be reasonable as regards the rights of others," what is such reasonable use being a question for the jury in each case. (Clark v. Allaman, 80 Pac., 571; Crawford v. Hathaway, 93 N. W., 781.)

This right to take is not only to use the water as it flows by and while it is so flowing, but also, so far as this can be done consistently with the rights of lower owners, the right to store it in reservoirs or confine it for future use after it has ceased to flow. (Long on Irr., sec. 118.)

It was shown that the water in the east prong ceased to flow on July 1st and in the west prong July 25th, but that at a much earlier date appellant, by damming the water, appropriated all of it and allowed none to get by to appellee's land, where he was prepared to catch and store at least a part, if not all, of the flow. Perhaps if the water had been allowed to continue to run down to appellee's lands up to the time it ceased to run at all in both streams (if appellee's pleadings are so framed as to meet the case made by the findings of the trial court), he would have been able to catch and store a sufficient quantity of this continued flow to continue to water his rice and save his crop from damage. Such use of the water by appellant as would prevent his doing this could hardly be said to be a reasonable use consistent with the equal right of appellee to the use of the water. This view makes it important to determine upon another trial whether the damage to appellee's crop was caused by this stoppage of the flow while the water was still running in the streams, depending to some extent upon whether he was prepared to catch and hold this continued flow if it had not been stopped by appellant. The evidence does not make this entirely clear.

The judgment is not predicated to any extent, as shown by the findings of the trial court, upon the act of appellant in diverting the water from the east prong to the west prong by means of the ditch cut by him in 1895, more than ten years before the institution of the suit.

It does not appear to us that the second, third and fourth propositions advanced by appellant under this assignment have any relation to the case made by the evidence.

What we have said disposes of the fourth and sixth assignments of error, with this addition: Appellee would not be entitled to the water which had been caught and stored by appellant while the stream was running, unless such body of water also included water which appellant caught and stored by entirely obstructing the flow while the stream was still running, to appellee's damage, as explained in this opinion.

There is no merit in the eighth assignment, in view of the decision of the Supreme Court in Watkins v. Clements, *supra*.

What we have said sufficiently disposes of the ninth and tenth assignments of error, which are overruled.

For the error indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*