TATUM v. ORANGE & N. W. RY. CO.
(No. 219.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 26, 1917. Rehearing Denied Nov. 14, 1917.)

1. EVIDENCE ⬅➙409 — RELEASE — MODIFICATION BY PAROL EVIDENCE.
A written contract of release of damages cannot be modified by parol testimony.

2. RELEASE ⬅➙17(2) — VALIDITY — FRAUD — FALSE REPRESENTATIONS.
In order to have a contract of release of damages canceled on the ground that employer induced such contract by fraudulently promising plaintiff a certain position, it must be shown that, at the time the promise was made, the employer did not intend to give plaintiff the position.

3. RELEASE ⬅➙58(6) — FALSE REPRESENTATIONS — SUFFICIENCY OF EVIDENCE — QUESTION FOR JURY.
In an action to set aside a release of damages, evidence held insufficient to warrant submission to the jury of the question of a fraudulent promise to give plaintiff employment, although sufficient for submission as to whether the promise was made.

4. TRIAL ⬅➙139(1) — QUESTIONS FOR JURY — SUFFICIENCY OF EVIDENCE.
Where reasonable and ordinary minds may arrive at different conclusions to be reached on any issue of fact, such issue should be submitted to the jury, but where the question of a reasonable minds could not differ, it should be taken from the jury.

5. EVIDENCE ⬅➙595 — DELIBERATIONS OF JURY — INFERENCES.
A jury is not authorized to render a verdict merely upon inferences drawn by it, but such inferences must have basis in the evidence in order to be warranted.

6. FRAUD ⬅➙50, 58(1) — SUFFICIENCY OF EVIDENCE — PRESUMPTION.
Fraud is never presumed, and, although wide latitude is allowed to prove it, yet it must be established by facts or circumstances sufficiently strong to warrant a finding that fraud existed, or inferences or presumptions based on such facts.

Appeal from District Court, Orange County; A. E. Davis, Judge.

Suit by T. J. Tatum against the Orange & Northwestern Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Howth & Adams and Jas. A. Harrison, all of Beaumont, for appellant. Holland & Holland, of Orange, and Andrews, Streetman, Burns & Logue, of Houston, for appellee.

HIGHTOWER, Jr., C. J. This suit was filed in the district court of Orange county by T. J. Tatum, plaintiff below, and appellant here, against the Orange & Northwestern Railway Company, defendant below and appellee here, to recover damages alleged to have been suffered and sustained in consequence of personal injuries received by the plaintiff while in the employ of said railway company on March 5, 1911. The property of the railway company was, at that time, in the hands of one Frank Andrews, as receiver, duly appointed by the United States District Court for the Southern District of Texas, said Frank Andrews, as such receiver, also being made a party defendant. Before the trial of the cause was reached in the court below, the said Frank Andrews had been discharged as such receiver, and he was therefore dismissed as a party defendant in this cause. After stating the facts upon which appellant relied as showing negligence on the part of appellee, and his injuries resulting therefrom, appellee also alleged, in substance, that he had theretofore, on March 27, 1912, executed a written contract of release, which recited that, in consideration of $4,300 being

paid to him by appellant, he had relinquished and released and compromised any and all claims and causes of action that he might have against appellee for the injuries sustained by him, but in the same connection further alleged that such contract of release on his part was brought about and induced by fraud on the part of appellee, in the following particulars, to wit: Appellant alleged that at the time the written contract, which by its terms released appellee from any and all liability on account of the injuries sustained by him, and which recited as a consideration therefor $4,300 in money paid to appellant, appellee, in order to induce appellant to make and execute such release, promised appellant that he would be given employment as yardmaster in the switchyards at Orange for the remainder of appellant's life, at a salary of $100 per month. Appellant then proceeded to allege that such promise of employment, as yardmaster, induced and caused him to execute said release, and that he would not have done so but for such promise and inducement, and further alleged that at the time it made such promise of employment to appellant, appellee never intended to carry out such promise, and in fact did not carry out such promise, but that the same was made in bad faith, and with the intention and purpose on the part of appellee to defraud and cheat appellant, and as an inducement to him to enter into and execute such contract of release, and that therefore said written contract of release was procured by fraud, and was not binding upon appellant, and appellant prayed that the same be set aside and canceled. Appellee, Orange & Northwestern Railway Company, after interposing a general demurrer and several special exceptions, none of which it is necessary to discuss in disposing of this appeal, further answered by general denial, plea of contributory negligence, plea of assumed risk, and further specially pleaded and set up the written contract of release of liability here sought to be canceled by appellant. The trial court, at the conclusion of the evidence below, peremptorily instructed the jury to return a verdict in favor of appellee, which was done, and judgment was entered in accordance with the verdict, to which action of the court in instructing the verdict appellant duly and properly excepted, and after motion for new trial was overruled, the case was properly brought here on appeal.

We find three assignments of error in appellant's brief, the first being directed against the action of the trial court in instructing a verdict for appellee; the second being directed against the action of the trial court in refusing to submit the case to the jury on special issues tendered by him, and the third is directed against the action of the trial court in overruling appellant's exceptions to the peremptory instruction.

This court may therefore treat the first and third assignments as one, and if we should conclude that those assignments are not well taken, that action would, necessarily, in effect, be to overrule the second assignment, also.

The written contract of release which was executed by appellant, and which is here sought to be canceled, as above explained, was as follows:

"General Release.

"Whereas, I, T. J. Tatum, of Orange, Texas, of the county of Orange, state of Texas, was injured on the 5th day of October, 1911, on a line of railroad owned or operated by the Orange and Northwestern Railroad Company, while employed as switchman, and while going from Orange to Bunker Hill on engine 317, the engine was derailed and I was thrown off and caught and dragged by the engine tank. My left leg was broken, my back bruised and sprained, and I was otherwise injured, under circumstances which I claim rendered such company liable in damages, although such liability is denied by such railroad company, and, the undersigned being desirous to compromise, adjust and settle the entire matter: Now, therefore, in consideration of the sum of forty-three hundred ($4,300.-00) dollars to me this day paid by the Orange & Northwestern Railroad Company, in behalf of itself and other companies whose lines are owned or operated by it, I do hereby compromise said claim, and do release and forever discharge the said Orange & Northwestern Railroad Company, and all companies whose lines are leased or operated by it, their agents and employés, from any and all liability for all claims for all injuries, including those that may hereafter develop, as well as those now apparent, and also do release and discharge them of all suits, actions, causes of action and claims for injuries and damages, which I have or might have arising out of the injuries above referred to, either to my person or property, and do hereby acknowledge full satisfaction of all such liability and causes of action.

"I further represent and covenant that at the time of receiving said payment and signing and sealing this release, I am of lawful age and legally competent to execute it, and that before signing and sealing it, I have fully informed myself of its contents and executed it with full knowledge thereof.

"Given under my hand and seal, this twenty-seventh day of March, 1912.

"[Signed]     T. J. Tatum."

This release was also acknowledged before H. A. Arnold, Jr., notary public in and for Harris county, Tex.

Upon the execution of this contract, the Orange & Northwestern Railway Company did, in fact, pay to appellant the sum of $4,300 as mentioned in the contract.

It will be observed that this written contract of release is a very full, definite, and complete contract, and clearly recites the consideration which moved appellant to its execution, and also acknowledges the receipt of such consideration by appellant.

[1] It is a well-established rule in this state that a contract of this character cannot be altered, changed, or modified in any manner by parol testimony, and we do not understand counsel for appellant to deny that such is the rule in this state, but ever since the decision in the case of Rail-

way Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, it has been the rule, also, that a contract of this character might be rescinded or canceled if it be pleaded and proved that the party seeking its rescission or cancellation was induced and caused to execute the same by fraudulent representations and promises made and held out to him by the other party thereto at the time of the making and execution of the contract, and this is the rule sought to be invoked by appellant here.

This court has had this case under consideration for some time, not because the testimony bearing upon the question of fraud necessary to be proved in order to set aside the contract as sought by appellant was voluminous, but because of the difficulty which we have felt in determining whether the evidence bearing upon the issue of fraud was sufficient to have compelled the trial court to send that issue to the jury as one of fact, under the liberal rule pertaining to jury trials in this state, and after a most careful study of this question we have concluded that the evidence was not sufficient to have compelled the submission of this issue of fraud to the jury, and that the trial court was correct in peremptorily instructing the jury to return a verdict for the appellee.

[2, 3] We have concluded that the state of the evidence was such that the trial court would not have been authorized to take from the jury the issue of fact as to whether appellee, at the time the written contract was entered into, also verbally promised appellant that he would be given the position of yardmaster at Orange for the remainder of his life, at a salary of $100 a month, for we think that the evidence of appellant himself, and that of his father, J. P. Tatum, was sufficient to have compelled the submission of that issue to the jury, notwithstanding its direct contradiction found in the evidence of appellee's claim agent, J. P. Gaston, and its then general manager, J. H. Elliott; but, before this written contract of release could be set aside or canceled, appellant was required, not only to prove that this promise of future employment as yardmaster was made by appellee, at the time the written contract of release was executed, and that the same was not, in fact, complied with by appellee, but also appellant was required to prove that the railroad company, who was at the time acting, as this record shows, through the general manager, Elliott, did not intend, at the time this contract was made and the future employment promised, to carry out such promise of future employment, and that therefore such promise of future employment was made for the purpose of cheating and inducing appellant to enter into the contract of release, and the solution of this point, we concede, has given us some difficulty.

The general manager, Elliott, testified emphatically that there was no promise on the part of appellee to give to appellant the position of yardmaster, as claimed by him, and the claim agent, Gaston, also emphatically testified that there was no promise to give to appellant the position of yardmaster, but this witness states that he did say to appellant that it was the policy of the company to give to injured employés such positions as they might be able to fill, etc., and the claim agent, Gaston, further testified that the railroad company had no intention of giving to appellant the position of yardmaster, as claimed by him. This portion of the claim agent's testimony is seized upon by counsel for appellant as bearing upon the issue of bad faith on the part of appellee at the time the contract of release was executed. In other words, counsel for appellant say that since this witness, Gaston, testified that the railroad company never had any intention of giving to appellant the position of yardmaster, this fact, along with the other testimony on this point, ought to have carried the case to the jury, and would have warranted the jury in finding that not only the contract of future employment as yardmaster was made, but that it was not the intention of the railroad company to keep such promise. A thorough and careful analysis of the testimony of the witness Gaston leads inevitably to the conclusion that this statement on his part, to the effect that the railroad company, at the time of the execution of the contract, did not intend to give to appellant future employment as yardmaster, was made because the witness knew, or thought he knew, that no such promise was, in fact, made to appellant.

The record discloses that practically the only other testimony upon this particular point was that of appellant himself, and, in substance, his testimony was that at the time the written contract of release was entered into and executed, the general manager, Elliott, told him (appellant) that he might go right on and take the job of yardmaster at that time, whereupon appellant, according to his testimony, replied that he was unable just at that time, by reason of his physical condition, to take the position and discharge its duties; that he did not want to go around the cars and engines on crutches, but that he would commence his duties as yardmaster as soon as he was able, whereupon, according to his testimony, the general manager, Elliott, stated, "All right," and that was about, in substance, everything that was said between the general manager, Elliott, and appellant.

This contract of release was executed in the city of Houston, and thereafter appellant returned to Orange, his home, and the testimony shows that for several months he was crippled or disabled, on account of his in-

juries, but that when he felt able to do so, he applied to the railroad company, and asked to be permitted to commence his duties as yardmaster at Orange, under the claimed contract, and was informed by the railroad company that he would have to wait until adjustments with reference to other employés could be made, etc., and that this occurred on several different occasions thereafter, and that finally the railroad company declined to let him take the position of yardmaster, and that he determined that they were not going to do so, etc., and filed this suit. The record also shows that General Manager Elliott severed his connection with the railroad company a short while after the contract of release in question was executed, and before the filing of this suit by appellant, and, really, that there was no further negotiation between Elliott and appellant, after his return to Orange from Houston.

[4] We say that this evidence is practically all there is in the record on this vital point, and by this appellant contends that the issue of fraud or bad faith was sufficiently raised and compelled the submission of the issue to the jury. We understand the rule in this state to be that where the state of the evidence is such that reasonable and ordinary minds may differ or arrive at different conclusions to be reached on any issue of fact, such issue should then be submitted to the jury, and this court has at all times been guided by that rule, but the converse is also the rule; that is, where the state of the evidence is such that reasonable and ordinary minds could not differ as to the conclusion that ought to be reached from a given state of facts, then it is the duty of the trial judge to take such issue away from the jury, as was done in this case.

[5] We have been unable to find any fact or circumstance in this record from which we could say that the jury in the trial court would have been authorized to find that at the time the written contract of release was executed, the railroad company, acting through its representatives negotiating this settlement, did not intend to give to appellant the position of yardmaster at Orange, if, indeed, such promise was made, unless we should hold that the fact that the position was not given him, taken in connection with the further fact that the jury would have been authorized to find that the position of yardmaster was promised him, would be sufficient to carry such issue to the jury. It might be that a jury would infer that the railroad company had no intention of complying with such a promise, if made, but the question with us is: Are there sufficient facts and circumstances in this record to have warranted such an inference? A jury is not authorized to render a verdict merely upon inferences drawn by it, but such inferences or deductions on the part of the jury must have a basis in the evidence, in order to be warranted, and that is the question with this court.

[6] The rule, as we understand it, is that fraud is never presumed; and, while we also understand that in cases where fraud is alleged, a wide latitude is allowed in the proof to establish the issue, yet the issue must be established by facts or circumstances sufficiently strong to warrant the jury in finding that the claimed fraud existed, and it will not be permitted merely to infer or presume that fraud existed, as claimed, without such fact or circumstance upon which to base such inference or presumption.

According to the appellant's own testimony, Mr. Elliott told him that he might go on to work in the position of yardmaster, at the time this release was executed, doing such duties as attending to the telephone, etc., but that, being informed by appellant that he was not physically able to do so, but stating that he would go ahead as soon as he was able, Mr. Elliott, at the very same time, assented, saying, "All right." Now, from those facts, and the further fact that the position of yardmaster was never thereafter given to appellant, can it be said that the jury would have been warranted in finding that at the very time this contract of release was executed, the railroad company, acting through its agents negotiating the release, did not intend to give to appellant the position of yardmaster, as claimed by him, and that therefore the contract of release was fraudulently induced and brought about, as claimed by appellant? We think that the jury would not have been warranted in so finding, and that the trial court would not have been warranted in submitting the point for their consideration.

It will not do to say that merely because the promise of the position of yardmaster was made to appellant, and because it was not given him, the jury might infer the fraud on the part of the railroad company, as claimed by appellant, because, if we should so hold here, then it would be, in effect, to hold that wherever the verbal promise or inducement is established as having been made at the time of the execution of the complete contract, and such promise should not thereafter be complied with, then the proof of fraud would be complete, and therefore we would be holding in effect, that any written contract between parties, however important the subject-matter and solemn the form taken, might be set aside and annulled on the ground of fraud, merely by showing that some verbal promise, made as an inducement to the execution of the contract, was not carried out or performed. In other words, we would be, in effect, holding that a written contract may be set aside and canceled by showing a verbal promise, which was an inducement to one of the parties to execute the same, and then showing that the verbal promise was not complied with. We believe there is no precede-

.for such a holding in this state, and we would hesitate to establish such a precedent.

From what we have said with reference to the first and third assignments of error, it follows that the second assignment of error, also, should be .overruled, and, finding no error in the action of the trial court, all assignments of error are overruled, and the judgment is, in all things, affirmed.