## TATUM v. ORANGE & N. W. RY. CO.
### (No. 359–3154.)

(Commission of Appeals of Texas, Section A. Nov. 29, 1922.)

Release ⬥⟳58(6) — Existence of unfulfilled verbal agreement alleged as inducement for written contract, and intention with which it was made held for jury.

In an action by an injured employee who claimed his written release was fraudulently induced by the master's verbal agreement to give him future employment, and that this verbal agreement, which was not fulfilled, was made with no intent of fulfillment, the fact of such verbal agreement and the master's intention in making *held* for the jury.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by T. J. Tatum against the Orange & Northwestern Railway Company. From a judgment of the Court of Civil Appeals (198 S. W. 348), affirming a judgment for defendant, plaintiff brings error. Judgments reversed, and cause remanded for new trial.

J. T. Adams, of Orange, and C. W. Howth and Jas. A. Harrison, both of Beaumont, for plaintiff in error.

Andrews, Streetman, Burns & Logue, of Houston, and Holland & Holland, of Orange, for defendant in error.

SPENCER, P. J. Plaintiff, T. J. Tatum, sued defendant, Orange & Northwestern Railway Company, to recover damages for personal injuries alleged to have been sustained by him, and to set aside a release executed by plaintiff in favor of defendant, in connection with the alleged injuries, upon the ground that the release was obtained by fraud. The fraud charged was, in substance, that the officials of the railway company had promised and agreed that, if plaintiff would release the company from all claim for damages arising out of the injuries complained of, the company would, in addition to the $4,-300 cash consideration recited in the release, give him the position of yardmaster at Orange, Tex., for life at a salary of $100. No provision dealing with the employment is to be found in the release which plaintiff executed; but plaintiff introduced evidence in support of an oral stipulation concerning it.

Plaintiff alleged that the promise of lifetime employment was not made in good faith, but fraudulently made, with the design of deceiving and cheating him, and with no intention, at the time of making it, of carrying it out. Upon the conclusion of the evidence, the trial court, being of the opinion that the evidence of plaintiff conclusively established that, if any such promise as con-tended for by plaintiff had been made, the employment was immediately tendered in good faith, peremptorily instructed a verdict for defendant.

In reviewing the action of the trial court, the Court of Civil Appeals concluded that there was evidence of the verbal agreement sufficient to take that issue to the jury, but held that, as a matter of law, there was no evidence that the railway company, acting through its officials, did not intend at the time of making the verbal provision for future employment to carry it out. Therefore that court affirmed the trial court's judgment. 198 S. W. 348.

The Supreme Court was inclined to the opinion that the decision of the honorable Court of Civil Appeals was in conflict with the case of Railway v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39, and hence granted the writ.

Plaintiff's version of the circumstances under which he executed the release was that, in company with his father, they visited a Mr. Gaston, the general claim agent of the company, who represented the latter in settling the claim. Gaston presented the release to plaintiff for his acceptance, but the latter declined to sign it unless the company would give him future employment. Gaston declined to give him the promise of future employment, but referred him to Mr. Elliott, the general manager of the company, as the one to determine that question. Plaintiff and his father then called upon Mr. Elliott, and explained to him the desire to secure the position of yardmaster as a part of the consideration for the release. According to plaintiff's testimony, Elliott agreed to give him the position, and wanted him to take the position before he ceased the use of crutches he was then using. The promise of the position was, he asserts, one of the inducing causes of his signing the release, and in the absence of which he would not have executed it. Plaintiff was never called for duty, and future employment was denied him.

Elliott, for the defendant, testified that the settlement of the claim was made by Gaston, who conferred freely with him relative to the settlement. He denied unequivocally, based upon his personal knowledge, that Tatum was promised anything in addition to the sum of money stated in the release. He stated that plaintiff inquired of him as to what the policy of the company would be with reference to employment after recovery, and that he assured him that it was the practice of the company, and which would obtain in his case, to give him as good a position as came within the scope of his capability, and consistent with his disability, which would go into effect as soon as he had made a complete recovery and announced himself ready.

⬥⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Gaston, for defendant, testified:

"As to why Tatum wanted to go over to Mr. Elliott's office when they came to settle with me, I will say that he wanted some assurance that he would have employment if he got able to take it. I don't remember whether I told him myself that he could get that or sent him to Mr. Elliott. I heard him tell that I did. I didn't tell him that I couldn't give him that job, and that he would have to see Mr. Elliott about it; I didn't tell him that. I told him that I wouldn't put the re-employment clause in the release. I suppose he went there because he wanted some assurance from the transportation department that he would get something to do. * * * As to whether, at the time that I made this settlement with Mr. Tatum, I never intended to give him the job as yardmaster for life as part of the settlement, I will say that I never promised the man that; no, sir; I didn't intend to do it. So far as I know it was not the intention, when he signed that release, of the company to give that man the job as yardmaster for life. I made the settlement. As to whether I think that Mr. Tatum would have signed this release if he didn't think he was going to get this job, and it was thought by you all that he was going to get it, I will say that he did sign it; I don't know whether he would or not; I didn't make him believe anything about the contract. I told him that the policy of the road was to take care of its injured employés; but I told him nothing specifically what they would do in this case. I told him if he was able to hold a position, they would take care of him. I told him they had always done it, but I made no specific promise."

It is clear from the record that the trial court's basis for the peremptory instruction was plaintiff's testimony detailing a conversation with Elliott, in which he stated that Elliott wanted him to take the position before he ceased the use of his crutches. This statement the trial court deemed sufficient to place it beyond controversy that the company intended in good faith to carry out the verbal agreement. The Honorable Court of Civil Appeals held a like view. To this conclusion we cannot give our assent.

The jury should first determine from a consideration of all the evidence whether there was a verbal agreement, such as contended for by plaintiff in error. They might conclude, from a consideration of the evidence of both parties, that there was an agreement to give plaintiff in error a position for life, to take effect as soon as he had made a complete recovery and had announced himself ready for duty. If their finding be favorable to plaintiff, it then becomes necessary for them to determine whether the company intended at the time of making the agreement to comply therewith.

This intention is not necessarily determined from an isolated statement, attributed to the company by plaintiff in detailing the conversations had with the representative at the time of executing the release. It is within the province of the jury to disregard the statement attributed to the representative, if it was in fact made, if they believed from all the circumstances that it was not made in good faith or with the intention of carrying it out.

It does not follow that, because Gaston denied that he made the verbal agreement, his testimony, that he had no intention of giving plaintiff the position, is necessarily to be disregarded. It is true that, where there is in fact no contract, there can be no intention concerning the carrying out of that which does not in fact exist; but, if the jury should find that there was a verbal agreement which one of the parties denies making, it would not be illogical for them to conclude that, as he denies in the face of facts found that he made an agreement, he had no intention of carrying out that agreement which he in fact made.

Whether there was a verbal agreement, and, if so, what the intention of defendant in error was at the time of making it with reference to carrying it out, are matters peculiarly within the province of the jury. This intention is to be reached from a consideration by them of all the acts and declarations of the company's representatives, made in connection with securing the release, coupled with its subsequent conduct in reference to carrying out or refusing to carry out the verbal agreement. Railway v. Titterington, supra. We disclaim, however, any intention of indicating an opinion upon the effect of the evidence which it has been necessary for us to review to determine a matter purely of law.

We recommend, therefore, that the judgment of the district court and of the Court of Civil Appeals be reversed, and the cause remanded for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.