## ORANGE & N. W. R. CO. v. TATUM.*
(No. 1083.)

(Court of Civil Appeals of Texas. Beaumont. April 9, 1924. Rehearing Denied April 23, 1924.)

**1. Appeal and error ⬡⟹729—Assignment of error that court refused peremptory instructions held too general.**

An assignment of error, stating, in substance, that the court erroneously refused to peremptorily instruct verdict for appellant, is too general to compel, or perhaps even warrant, its consideration.

**2. Pleading ⬡⟹430(2)—Request for peremptory instruction cannot raise question of variance not previously objected to.**

When evidence is offered which would prove a materially different contract from that alleged, when recovery is sought upon a contract, or for damages for its breach, the opposing party, failing to object to it as variance, cannot afterwards raise the point by requesting peremptory instruction in his favor.

**3. Pleading ⬡⟹430(2)—Variance waived by failure to object to evidence when presented.**

Variance between allegations and proof, not objected to when evidence presented, is waived.

**4. Appeal and error ⬡⟹732—Assignment of error in overruling motion for new trial held too general to warrant consideration.**

An assignment that court erred in overruling motion for new trial because evidence was insufficient to warrant jury's answer to first and second special issues, but not stating why or wherein evidence was insufficient, is too general to warrant consideration in view of rules 26 and 25 for Courts of Civil Appeals.

**5. Release ⬡⟹57(2)—Question as to whether there was fraud by railroad inducing injured employee to' sign release held for jury.**

In switchman's action for injuries, evidence held sufficient to warrant jury in finding that defendant's verbal agreement to give plaintiff position as yardmaster was made for fraudulent purpose of inducing plaintiff to sign release of defendant from liability.

**6. Appeal and error ⬡⟹999(1)—Jury's determination on matters peculiarly within their province not disturbed.**

The Court of Civil Appeals is without authority to determine an issue of fact contrary to the jury's determination, where the issue is peculiarly within their province.

**7. Appeal and error ⬡⟹731(1)—Assignment of error as to amount of verdict held too general for consideration.**

An assignment of error, substantially stating that the verdict is excessive, and the result of bias and passion, is too general for consideration.

**8. Damages ⬡⟹132(1)—$11,000 for permanent injuries to switchman held not excessive.**

$11,000 for serious and permanent injuries to switchman, from which he continued to suffer, and which disqualified him from doing any character of manual work, except of a light kind, held not excessive.

Appeal from District Court, Orange County; A. D. Lipscomb, Judge.

Action by T. J. Tatum against the Orange & Northwestern Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 245 S. W. 231.

Andrews, Streetman, Logue & Mobley, of Houston, and Holland & Holland, of Orange, for appellant.

J. A. Harrison and C. W. Howth, both of Beaumont, and Adams & Bruce, of Orange, for appellee.

HIGHTOWER, C. J. The appellant, Orange & Northwestern Railroad Company, prosecutes this appeal from a judgment against it in favor of appellee, T. J. Tatum, rendered by the district court of Orange county in the sum of $11,273.13, with interest on that amount at the rate of 6 per cent. per annum from the date of the judgment. .

The suit by the appellee, the plaintiff below, was one for the recovery of damages because of personal injuries alleged to have been sustained by him while in the employ of appellant in the capacity of switchman on appellant's railroad on the 5th day of October, 1911. The appellee alleged that appellant was guilty of negligence in several particulars, which were specified, and that such negligence was the proximate cause of the injuries, and prayed for judgment because of such injuries in the sum of $25,000.

The appellee further alleged in his petition that on the 27th day of March, 1912, he executed a written contract of release, in which it was recited that in consideration of $4,300 in cash, paid to him by appellant, he relased any and all claim and causes of action that he might have against appellant because of the personal injuries sustained by him, and that such release acknowledged the payment to him of the sum of $4,300 in money. He further alleged in substance that part of the consideration for the execution by him of the written release was a verbal promise and agreement made by appellant's general manager, Elliot, and its general claim agent, Gaston, that appellant would give him the position as yardmaster at Orange, Tex., for life at a salary of $100 per month. He further alleged that appellant thereafter refused to give him the position as yardmaster as promised, and that appellant had no intention at the time of making such promise to give him such position, and that the promise was only made for the purpose of inducing appellee to execute the written release to appellant, and that the promise was fraudulently made with no intention on the part of appellant of keeping it, and

⬡⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction June 12, 1924.

that therefore the written contract of release was not binding against him, and he prayed that it be canceled and set aside, and that he be permitted to recover for the personal injuries sustained by him, and asked in that connection that whatever amount he might recover against appellant be offset by the amount of money that appellant paid him at the time the written release was executed.

Appellant answered by general demurrer, several special exceptions, general denial, and also specially pleading the written release that had been executed by appellee in bar of this action.

The case has been twice tried in the lower court, and this is the second appeal to this court. On the first trial in the lower court a verdict was peremptorily instructed in favor of the defendant, and judgment was entered accordingly. From that judgment Tatum, the plaintiff, appealed to this court, and the trial court's judgment was affirmed; this court's opinion on that appeal being reported in 198 S. W. 348. From the opinion of this court affirming the judgment, Tatum sued out a writ of error to the Supreme Court of this state, and this court's judgment, affirming that of the trial court, was reversed, and the cause was remanded to the district court of Orange county in an opinion written by the Commission of Appeals and approved by the Supreme Court, which will be found reported in 245 S. W. 231.

Upon the trial from which the present appeal comes, the pleadings of the parties are the same as they were upon the former trial, and the evidence is substantially the same as before, with the exception in one particular that we shall state hereinafter.

For a full and complete statement in detail of the nature of this suit and the pleadings and evidence upon which this judgment rests, we refer to our former opinion as above indicated, and to the opinion of the Commission of Appeals which reversed our judgment and remanded the case to the trial court.

On the last trial the case was submitted to a jury upon the following special issues:

"(1) Do you find from a preponderance of the evidence that the plaintiff at the time he signed the agreement for settlement was promised by the defendant's agent or agents, as part of the inducement thereto, that he would be given the position of yardmaster at Orange for life at $100 per month. Answer 'Yes' or 'No.'

"(2) If you have found that such a promise was made to the plaintiff as an inducement to make a settlement, then you will say whether or not you find from a preponderance of the evidence that such promise was made fraudulently and was intended to deceive the plaintiff, and without a purpose of carrying it out in good faith. Answer 'Yes' or 'No.'

"(3) Taking into consideration all the facts which you find from a preponderance of the evidence, state what amount of money, with-

out taking any account whatever of any heretofore paid, would fairly compensate plaintiff for the injuries which he has suffered as consequences of the accident? In passing upon the question of damages, if any, you will take into consideration the plaintiff's loss of earnings in the past, if any, and his loss of earning in the future, if any, and his pain and suffering in the past, if any, and his pain and suffering in the future, if any."

The jury answered the first and second special issues in the affirmative, and their answer to the third was a finding that the plaintiff had sustained damages in consequence of his personal injuries in the sum of $18,500.

Appellant in due time filed its motion for a new trial attacking the verdict and judgment by eight assignments of error, and, after the motion was overruled, in due time perfected its appeal to this court. Afterwards appellant filed additional assignments of error in the trial court, and all assignments have been brought forward in its brief in this court.

While there are a number of assignments and propositions challenging the verdict and judgment of the trial court, some of them raise practically the same question, and it is unnecessary to the disposition of this appeal to take them up in their numerical order, because by them all only about five or six main contentions are made by appellant.

[1-3] Appellant first contends that the trial court was in error in refusing to peremptorily instruct the verdict in its favor. This is the substance of the assignment of error, and it will be seen at a glance that the assignment is entirely too general to compel or perhaps even warrant consideration by this court, but we have decided to consider it over the protest of the appellee. One of appellant's contentions under this assignment is that there was a clear and fatal variance between the appellee's pleading and his proof as to the terms of the claimed verbal contract to give appellee the position of yardmaster at Orange. Appellee's pleading in that connection was in substance that appellant's agents, Elliot and Gaston, promised to give him the position of yardmaster at Orange for life, at a salary of $100 per month. There is no question about the pleading, but it is appellant's contention in this connection that appellee's proof showed a clear and fatal variance from this allegation, in that the proof was that the position of yardmaster was to be given appellee for life, or as long as he wanted it, at a salary of $100 per month, and that therefore the proof showed a very different contract of inducement from the one alleged, and that, this being so, the verdict should have been instructed in favor of appellant, because appellee had failed to prove the contract of inducement, as alleged by him.

In order that we may be accurate in our

statement of the evidence on this point, we might as well quote enough of it to make plain appellant's contention in this connection and our disposition of it. T. J. Tatum, while a witness on the stand in his own behalf, speaking on the point now under' consideration, among other things testified:

"'I (meaning appellant's agent, Mr. Gaston) will give you $4,300, and we will give you that job in Orange, and you can go down there and talk to them when you get able to.' I told Gaston about the job, first, about this job in the yard here, this yardmaster's job at $100 a month, and Mr. Gaston told me in front of papa, 'Mr. Elliot is in his office; you go down and talk to Mr. Elliot,' and I went and talked to him about the job, and he said 'Why, sure I will give it to you, and we will take care of you, and if your leg has to be taken off, why we will take you back to the hospital, and stand the expense of it, and in case you need any medicine you go to the drug store and get it, and the company will pay for it until you get sound and well.' As to how long that job would last—he told me he would take care of me. In the negotiations for this ⸢settlement⸥— me taking this money and executing them this release—they agreed that this job as yardmaster was to last as long as I lived. That is what Mr. Elliot told me, he is the general manager, and that is the words he used. He told me all that, and there wasn't anybody in there but me and Elliot and papa in his office. He told me he would give me that job as yardmaster as long as I wanted it, as long as I lived; he said, 'You can do that,' and after Elliot told me that I went on back and settled with Gaston. Mr. Gaston understood the agreement and understanding, and he said it wasn't necessary for it to be incorporated in the papers; that the company would live up to what they had agreed to do; that they would live up to what they said about this job. It is like awhile ago, I said, I had always worked for a living, and I wanted a job, and I told Gaston I wouldn't settle for that unless they give me this job. Gaston and Elliot promised to give me this job as yardmaster at Orange for life at $100 per month before I signed the release. You understand, when I was settling with Gaston, he said, 'You go down and talk to Mr. Elliot,' and after that I went down and talked to him, and he told me the very same thing, and I come back and told Gaston what he had agreed to do, and Gaston said, 'We will take care of you and give you this job.' That was the agreement before I signed the release, and that is the reason I signed the release; if they hadn't told me that when I signed that release for them, I wouldn't have signed that paper. I wouldn't have signed that paper unless I got that job for life; I didn't want to have a lawsuit, and I thought I would have a job, and they would give me a few thousand dollars to pay my expenses. The release was signed under that agreement and I relied on that promise, and they gave me the money, '$4,300."

W. J. Tatum, appellee's father, testified relative to the point now under consideration as follows:

"I had a conversation with Gaston about this matter of settlement, and he talked money, $4,-300, and I told my son that it was not enough, and then we went to see Mr. Elliot, to see what he said in connection with it, and Tom told him of his objection, and when he done it he said, 'We will give you a job for the balance of your life as yardmaster there for $100 a month.' I told Mr. Gaston that Tom was crippled for life, that $4,300 wasn't enough because he was crippled for life. I believed that. When Mr. Elliot said, 'I will give you that job as yardmaster at $100 a month, as yardmaster in Orange for life,' I did not say, 'Why, Tom, you are crippled for life, and can't hold that job.' I did not 'say that. All that was said with reference to him being able to hold that job was Mr. Elliot said, 'That is all right, you will be able to do it,' he said, 'You can stand around and direct work, but you will not be able to switch.' He said he would give him a job that he could do, and he said he could do that. He said Tom would be required to take charge of the yard there, and I suppose do the yardmaster's work; I reckon he could do it; a man can do many a thing if he has got to; he would not be able to do manual labor, but he could hold that job. I don't know anything about what work he was to do on that job; the understanding between them was that he would be able to direct the work but he couldn't do the work himself. He said, 'You can hold that job, you won't have to do the work yourself, you will only have to stand around and direct it.'

"Then we went out of there, and went back to Mr. Gaston's office, and this question 'come up about the signing of it, and I told him I wouldn't sign it if it was me until that clause was inserted in it. It was signed. I signed my name on it, but didn't sign that part of it. I signed my name to this, 'that it was read over to him and fully explained to him, and that he understood it and signed it,' but he signed it with the understanding that he was to have that job at $100 a month. He was to commence as soon as he was able to resume work. He agreed to work for $100 a month—that is what they offered him, and they offered him the job for as long as he wanted it—for life. * * * When he agreed to work for $100 a month he did not say how long he would work for that salary; there was no time mentioned, but he was to have it for life, or as long as he wanted it. He promised Mr. Elliot that when he was able he would take up the duties and direct them for $100 a month. He didn't say how long he would stay on the job. When we reached the point where $4,300 was offered, we went to see Mr. Elliot to know whether he would O. K. the amount called for in that agreement reached between my son and Mr. Gaston, also the job, and Mr. Elliot said, 'We will give you a job as long as you want it, as long as you live, or as long as you want it.'"

Mrs. Tatum, appellee's wife, was a witness in the case, and on the point in question testified as follows:

"I am the wife of the plaintiff. I remember Mr. Gaston, the claim agent of the Orange & Northwestern Railroad Company. A short time before my husband got this voucher for $4,300, Mr. Gaston came out to my house to see me and Tom about this matter. Upon that occasion Mr. Gaston told me that in addition to

whatever money they might give my husband in settlement that they would give him a lifetime job as yardmaster."

We feel sure that we have made a fair and full statement of all the material evidence which it is claimed by appellant shows a fatal variance between the appellee's pleading and proof regarding the claimed verbal contract of inducement, and we are certain that such evidence not only did not require a peremptory instruction in appellee's favor on the theory of variance, but, on the contrary, we are certain that the court would have committed a reversible error against appellee had a peremptory instruction been given in appellant's favor on that theory. We are not unmindful of the well-established rule in this state that requires a party litigant suing upon a contract, or for damages growing out of the breach of a contract, to prove the contract substantially as pleaded by him. Many authorities in this state and elsewhere might be enumerated in support of that rule, and some of them have been cited by appellant in its brief. We also understand the rule to be, however, that, when evidence is offered which would prove a materially different contract from that alleged, when recovery is sought upon the contract, or for damages for its breach, the party against whom such evidence is offered is required to object to it on the ground of variance, and may not sit by without objection and afterwards successfully raise the point of variance by way of requesting a peremptory instruction in his favor. In such an instance the failure to object to the evidence is treated as a waiver of the variance, if any. Moffatt v. Snydor, 13 Tex. 628.; Huston v. Clute, 19 Tex. 179; First National Bank of Rockwell v. Stephenson, 82 Tex. 435, 18 S. W. 583; Clark v. Reese, 26 Tex. Civ. App. 619, 64 S. W. 783; International Harvester Co., etc., v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93. In the last-cited case, speaking to the point, it was said:

"However, the rule seems to be that where evidence is admitted without objection, the question of variance cannot be raised upon a [charge] to the jury."

It would seem unnecessary to further discuss appellant's contention that its peremptory charge would have been given on the theory of variance, because all evidence which appellant claims showed the variance was admitted without any objection whatever by appellant, and it could not, under the authorities, raise the question of variance either by peremptory instruction or otherwise, as it attempted to do in this case.

We are not sure, however, that the evidence touching the point under consideration would constitute a fatal variance as claimed by appellant, even had it been objected to at the time it was offered. This suit is not based upon the claimed verbal contract, nor was it sought by the plaintiff to recover damages for its breach; but, on the contrary, this is a suit to recover damages for personal injuries alleged to have been negligently inflicted upon appellee by appellant, and the claimed verbal contract of inducement to the execution of the release was only set up and sought to be canceled by appellee on the ground of fraud, because it was an obstacle in the way of his recovery for the personal injuries sustained by him. Appellee answers appellant's contention in this connection by a counter proposition which is substantially to the effect that in this character of suit it was immaterial to appellant whether the promise of the position of yardmaster was for as long as appellee might live, or whether it was only for as long as appellee might want the position. In this connection counsel of appellee contends that, if any verbal contract as claimed by appellee was made by appellant to give him the position of yardmaster at a salary of $100 a month, and that appellant made such promise for the fraudulent purpose of inducing the execution of the written release by appellee, then it would make no material difference whether the promise was to give the job during appellee's lifetime or for any other specified period. We are inclined to think that appellee's counter proposition as applied to this case is correct, but we do not decide the point because we do not deem it necessary to do so. We think that it is only necessary, in disposing of the point here, to hold that appellant waived the question of variance by not raising the point at the proper time by objecting to the evidence which appellant now claims constituted a fatal variance. We have read all of the authorities cited by appellant in connection with this point, and we do not consider that any of them sustain the appellant in its contention that there was a fatal variance between the pleadings and proof of the appellee in this case. We might as well dispose of another assignment made by appellant in this same connection, which is that the court was in error in declining to submit for the jury's consideration this special issue:

"Did Mr. J. H. Elliot, the vice president and general manager of the Orange & Northwestern Railroad Company, in a conversation had with the plaintiff shortly prior to the execution of the release, which is in evidence before you, enter into a contract and agreement with the plaintiff that, if the plaintiff would execute a binding release to the defendant herein of all damages claimed on account of plaintiff's injuries, sustained in the wreck about which you have heard testimony, the railroad company, in consideration of such release, would not only pay to the plaintiff the sum of $4,300, but

would also bind itself to give to the plaintiff a position at Orange, Tex., to be known as that of yardmaster, at a salary of $100 per month, and to be held by plaintiff for life, or so long as he might desire to keep it. Answer 'Yes' or 'No' as you find the fact to be."

The court refused this requested issue. It is plaintiff's contention, in substance, that it was entitled to have an answer of the jury to this requested issue, which, if answered favorably to it on its theory of variance, would have established completely and unmistakably a variance between plaintiff's allegations and proof as to the terms of the claimed verbal contract of employment. Again we say that appellant cannot raise the question of variance in the manner attempted by it, and the same authorities we have already cited are here referred to. We therefore overrule the assignment challenging the action of the trial court in refusing this special issue.

There are other propositions advanced in appellant's brief which challenge the verdict and judgment on the ground of the claimed variance between plaintiff's pleading and proof as to the terms of the alleged verbal contract of inducement, but we have concluded that they are not tenable, and overrule them without further discussion of them.

[4] Appellant further contends that its motion for new trial was erroneously overruled, and should have been granted, because the evidence was insufficient to warrant the answer of the jury to the first and second special issues submitted. The assignment in this connection does not attempt to point out why or wherein the evidence was insufficient to support the jury's answer to either of these issues, and therefore the assignment is too general and not entitled to consideration, and therefore there was no error on the part of the trial court in overruling the motion based on the claimed insufficiency of evidence as to these issues, and appellant is not entitled to have that action reviewed by this court. Rule 26 and rule 25 for the Courts of Civil Appeals (142 S. W. 12); Sanger Bros. v. Craddock (Tex. Sup.) 2 S. W 196; Gross v. Hays, 73 Tex. 511, 11 S. W. 523; Stacy v. Delery, 57 Tex. Civ. App. 242, 122 S. W. 300; Railway Company v. Norman (Tex. Civ. App.) 91 S. W. 594; Suggs v. Terry (Tex. Civ. App.) 34 S. W. 354; W. U. Tel. Co. v. Mitchell, 89 Tex. 443, 35 S. W. 4; Clark v. Pearce, 80 Tex. 146, 15 S. W. 787; Motor Truck Co. v. Mears (Tex. Civ. App.) 229 S. W. 994; Tex. Employers' Ins. Ass'n v. Pierce (Tex. Civ. App.) 254 S. W. 1019.

[5, 6] If, however, the assignment should be considered, we are precluded and could not sustain it in view of the holding of the Commission of Appeals which was approved by the Supreme Court on the first appeal and writ of error in this case, to which we have above referred. We held on the former appeal, and we now hold, that the evidence was sufficient to warrant a finding by a jury that the claimed verbal contract by appellant to give to appellee the position of yardmaster at Orange was made as alleged by appellee, but on that appeal we also held that the evidence was not sufficient to carry the case to the jury; that the promise of the position was made for the fraudulent purpose of inducing Tatum to execute the written release. The Commission of Appeals, however, in disposing of the writ of error held that the evidence, as shown in the record on that appeal, which is the same as the evidence on this appeal, was sufficient to warrant a jury in concluding that the promise by appellant to give to Tatum the position of yardmaster was made for the fraudulent purpose of inducing the execution of the written release by Tatum, and therefore that court reversed our holding on the point.

In concluding the matter the Commission of Appeals, on the point that the evidence was sufficient to carry the case to the jury, said:

"Whether there was a verbal agreement, and, if so, what the intention of defendant in error was at the time of making it with reference to carrying it out, are matters peculiarly within the province of the jury. This intention is to be reached from a consideration by them of the acts and declarations of the company's representatives, made in connection with securing the release, coupled with its subsequent conduct in reference to carrying out, or refusing to carry out, the verbal agreement."

If the evidence on the former appeal was sufficient to make the issue of fraud one peculiarly within the province of the jury for determination, then on the trial from which this appeal comes the evidence was sufficient to make the issue of fraud one peculiarly within the province of the jury for determination, and they have determined it against appellant, and it is not our province, and we would not have authority to determine an issue of fact contrary to the jury's determination, where that issue was one peculiarly within the province of the jury. In holding, on the former appeal that a jury would not be authorized by the evidence in the record to find that the claimed verbal promise of employment was fraudulently made, we felt certain that we were correct, after giving that question careful consideration, and we still think so, notwithstanding the opinion to the contrary by the Commission of Appeals, which was approved by the Supreme Court, and we say this with all due respect for our superiors. We could find no authority in our search while the former appeal was before us that would sustain us in holding that the evidence was such as to carry the issue of fraud to the jury, and we

do not discover that the Commission of Appeals were able to cite any authority in their opinion that sustained their holding that the evidence raised a question for the jury as to the issue of fraud. We note that the Commission cites the case of Railway v. Titterington, 84 Tex. 218, 19 S. W 472, 31 Am. St. Rep. 39. We also cited that case in our opinion, on the former appeal as showing that a written contract, although full and complete upon its face, might be set aside and canceled on the ground that its execution was induced by fraud, but we do not understand that case to hold that a full and complete written contract may be set aside on the ground that its execution was induced by fraud, where the evidence touching the claimed fraud only goes so far as to prove that the claimed verbal contract of inducement was made, and that the party making the verbal promise or contract did not carry it out would be sufficient to authorize a jury to draw the conclusion or inference that the verbal contract or promise of inducement was fraudulently made. The fact of the holding of the Commission of Appeals in reversing our former opinion on the point in question is to hold that in every case, where it is sought to set aside a full and complete written contract on the ground that its execution was induced by a verbal promise to do something not promised to be done in the written contract, and it is alleged that the verbal promise was fraudulently made with a view to inducing the execution of the contract by the complaining party, and a jury finds that the claimed verbal contract or promise was made, then they may set aside the written contract, however important the subject-matter or solemn the form of the contract, on the ground that it was induced by fraud, with the further condition only that the other party deny the execution of the verbal contract, and the claimed verbal promise was not kept. We thought on the former appeal of this case that it would be productive of much mischief to hold that a solemn written contract might be set aside and canceled upon such a slight showing, and therefore had no hesitancy in reaching our conclusion on the point; and at this time the writer must say that he regrets that our Supreme Court was compelled to hold that we were in error.

It follows that appellant's assignment attacking the verdict of the jury on the issue of fraud must be overruled.

[7, 8] It is further contended by appellant that the jury's verdict in this case is excessive as to the amount found in favor of the appellee. The assignment is in substance that the verdict of the jury is excessive, and was the result of bias and passion. Under all the decisions the assignment is too general for consideration, but at the same time we have carefully read all evidence bearing upon the extent of the appellee's injury, and have reached the conclusion without further discussion that the jury's verdict was not excessive. The amount that had been paid appellee by appellant at the time the written release was executed, with interest thereon at the rate of 6 per cent. per annum from the date of the payment, was deducted from the amount of damages found by the jury in appellee's favor, and judgment entered in his favor, as we have shown, for only $11,273.13.

Appellee's injuries were undoubtedly very serious and permanent, and, according to his own evidence, he even yet suffers pain from his injuries, and has never been, and is not yet, able to do any character of manual labor, except that of a very light kind. We do not care to go into detail as to the extent of his injuries. It would serve no useful purpose either to appellant in this case or as a precedent in any other.

We have considered all other contentions made by appellant, and find that they point out no reversible error in this case, and they are all overruled, and the trial court's judgment has been ordered affirmed.